May it please the court. My name is Maureen Scott, and I'm representing the Arizona Corporation Commission in this matter I would like to reserve three minutes for rebuttal and Counsel for COVAD will also be taking three minutes of the time this morning This case involves a petition for arbitration under section 252 of the Telecommunications Act of 1996 which was filed by COVAD in 2004 The arbitration came about because two FCC orders the TRO and the TRRO Delisted certain network elements quest was required to provide COVAD under section 251 of the Act The parties could not agree on The competitive checklist in section 271 so they sought a Commission ruling on whether the Arizona Corporation Commission could address Elements that were solely required under section 271 And no longer required under 251 I don't want to interrupt your argument, but going right to the heart of it Why should we say state commissions are empowered to impose section? 271 requirements in the course of arbitrating ICA's under 252 But the first the seventh the eighth and eleventh circuit All reach that opposite conclusion the your honor Most of the courts in fact almost all of the courts that have considered this issue Have not found in favor of the State Commission however, we believe that The courts in looking at the issue have considered the language in section 252 primarily and have not focused upon important language in section 271 of the Act Your honor under section 271 c2a of the Act it requires the elements of the competitive checklist To be included within an interconnection agreement or a statement of generally available terms and conditions under So is the State Commission Authority under to Hide the duties under 251 not section 270 Those are a portion of its duties your honor to address the 251 Issues, but the State Commissions can also incorporate in any interconnection agreement arbitration Requirements under state law if they are raised and we believe that under section 271 c2a They are also supposed to ensure that the competitive checklist Requirements are also contained in the interconnection agreement or statement of generally available terms and conditions you your honor section 271 is not specifically referenced in section 252 that is correct We would agree that the State Commissions have no substantive decision-making authority with respect to 271 issues That is one facet of 271 yes on the application that a box admits The State Commission has a consulting role But if you look further at section 271 in particular 271 c2 the State Commission Is in charge of the interconnection agreement and SGAT process in fact the State Commission has exclusive authority over that process the elements of the competitive checklist are required to be included within an interconnection agreement or an SGAT and the State Commission has Exclusive authority over that process But going back to I think your point This is not to say and this is what we tried to distinguish in our brief This is not to say that we're arguing that we have substantive decision-making authority under section 271 we agree that is the FCC's realm They only the FCC can make substantive decisions under that provision of the Act What the Arizona Commission is arguing here? It's not intending to make substantive decisions that the FCC has on not already made The only thing 271 c2a Permits would be for the Arizona Commission to include decisions the FCC has already made Within an interconnection agreement or SGAT We we could not go against FCC policies or rulings We would have to implement in accordance with their decision-making Thus what I'm trying to do is differentiate between a consultation role in the initial application and implementation role as 271 c2a Provides and a substantive decision-making role, which is left to the FCC under section 271 of the Act I May be lost in the vocabulary, but I'm not sure now that I really understand. Okay, what we're talking about What is it that Arizona's? The role that Arizona Corporation Commission seeks to assign to itself what practical difference does that make Your honor, in fact, it makes a very big difference by implementing or including the FCC's rulings under section 271 and we're just talking about the competitive checklist by including those in an interconnection agreement It makes those commitments subject to a binding agreement between the two parties in addition There are very important Policy reasons which support the State Commission's role under the 252 process for instance with respect to the rate-setting issue, which is at Was it subject to dispute here? We agree the Arizona Commission agrees that for 271 network elements only they're subject to the Just-and-reasonable standard according to the FCC now which would take them out of the te lyric pricing Standard which is utilized for 251 unis Typically the just-and-reasonable where a market is competitive is market-based rates The Arizona Commission would simply ensure that the rates are in fact market-based as required by the FCC That is very important today, especially With all of the forbearance petitions that are filed at the FCC to do away with unbundling requirements It's important for the the State Commission to be able to ensure that the rates are in fact market-based So that the CELUX are not competitively disadvantaged Well, so so I think this brings us back to your first proposition where I think you tried to downplay the significance of what Arizona The Commission was doing but in fact, it's not nearly as insignificant as you suggest It's more than than applying the same list The FCC is approved because it means applying that list in a different context it does have a pretty serious practical effect and greatly expands the The authority being asserted by the Commission well beyond the bounds that the FCC is asserting it Requirements are not being imposed by the FCC in the same context that the Arizona Commission seeks to impose them Your honor, I would respectfully disagree with that I think the way the Arizona Commission would impose any obligations that Arise as a result of the competitive checklist Would have to be consistent with any FCC rulings on the matter For instance the competitive checklist itself lists three network elements that can have to be provided By the BAC even if they're no longer required to make them available under 251 right now Unless the FCC has come out and said all right under each of these network elements specified in the competitive checklist You have to make all of these other elements available The FCC hasn't done that at this point So all the State Commission could require at this point would be these specifically enumerated checklist items in the competitive Checklist the BAC the matter would have to be referred back to the FCC For instance if COVAD came back and said we want OCN Transporter loops if the FCC hasn't ruled on that the State Commission can't Order the BAC to provide it because that would be substantive decision-making With respect to the pricing the FCC has said just pricing now in accordance with the just and reasonable standard Which is interpreted by many to be market-based rates We would have to comply with that the only role we would have would be to ensure That indeed the rates are market-based rates as the FCC requires We could not set rate policy on our own There is one issue. I want to speak to with respect to our order We did require TE Lyric pricing for a very short period of time because there were no other rates With no other information in the record with respect to market-based rates So and we we had ordered the parties We had ordered an expedited proceeding to commence to address that but the parties had asked for delay Because they had wanted to settle the issue They indeed did reach a settlement issue, which is my understanding reach back to the effective date of the Commission's order So therefore I don't believe the TE Lyric rates were ever applied and in fact the parties now have an agreement Going forward which provides for pricing of these transport circuits out at an out of an FCC tariff right now In my opinion I have argued your honor Yes, that that would make that facet of this proceeding mood, although I believe quest's view on this issue is is somewhat different We believe we also believe that the The provisions and other court orders which have found that states Have no role in this regard. They focus on what they call the FCC's Enforcement responsibility under section 271 What I would say to that argument is or that finding is the arbitration? proceedings conducted by state commissions versus an enforcement proceeding Which is not something I agree the state commission would get involved with they're completely different an Enforcement proceeding is provided for under section 271 d6 of the act That's something the FCC has exclusive responsibility Over we agree with that. We're talking not about an enforcement proceeding here. We're just talking about an arbitration and ensuring that the competitive checklist items are contained in an interconnection agreement or an SGAT as section 271 of the act itself requires I Believe my time is about up your honor unless you have any further questions of me now I know you wanted to save some time for your colleagues. So we'll reserve whatever is left after that for your rebuttal. Thank you My name is Jason Wakefield and I represent Kovac communications company And I'd like to very briefly address the policy and business impact of this case. So what are those impacts? The main impact is that the court's decision in this case will determine where the Kovac has to pay special access rates Unbundled network element rates or something in between. So why does that matter? It matters because the Federal Communications Commission had looked at the differential between special access Unbundled network element rates in paragraphs 102 and 316 of the trial and review order in paragraph 56 Of the trying to review remand order and they identified several key differences between special access and unbundled network element Special access is generally higher It often requires long-term contracts often has early termination charges and often has volume commitment So all those factors make it very difficult for companies such as Kovac to provide competitive services to its customers Indeed, we can consider the analogy of the United States Postal Service Imagine if the United States Postal Service owned the roads and was able to charge its competitors such as FedEx above cost toll rates in order to access the roads and Imagine if FedEx was required to enter into long-term contracts to access the roads Even if it had alternative ways to deliver the mail And be very difficult under those conditions for FedEx to provide innovative services to its customers. Similarly, it's difficult for If it has to rely on special access, so that's I hear this is an argument to the to the regulator But I'm not sure that it's an argument that should tell us why the regulator here should be state rather than federal or why? The Arizona Commission has authority to impose the result you seek In this case it goes to the preemption analysis one of the issues in the preemption analysis is whether or not there is a Federal policy that's at play and the federal policy under the Federal Telecommunications Act is to encourage competition So the step that the Arizona Commission is trying to take in this instance is completely consistent with that federal policy And therefore there's no preemption. That's that's the time Well, but I may not be completely consistent with what the FCC is determined to be appropriate regulatory policy the FCC is actually subject to the Federal Telecommunications Act and Section 271 c2a outlines the structure that guides the the interplay between the Federal Communications Commission and the state commissions and in that section of the act the act says that there must be a Agreement or an ESCAP in this instance. There is no ESCAP There must be an agreement that includes and this is in 271 c2a 2 1 2 And it talks about and this is on in paragraph 19 of I'm sorry page 19 of Kovats initial brief It says it must include the elements of the competitive checklist. And so the Federal Telecommunications Act itself Provides the authority to the state commission to make sure that the elements of the competitive checklist are in a interconnection agreement So in that instance the State Commission in this case The Arizona Commission has the authority to require that the competitive checklist being the interconnection agreement, and that's what the Commission did For all these reasons we would respectfully request that the court reverse the district court order Thank you for your argument miss Scott will have three and a half minutes or so left for rebuttal and We're here now from Well, I don't know what sequence you're planning to use so I'll let you tell me counsel for Appalachian allied. Let me see Good morning, your honors John Devaney appear on behalf of quest corporation and My colleague. Mr. Dunbar will be presenting his amici For three minutes if I finish early, may I see one or two minutes to my colleague you may thank you Your honors the district courts decision in this case is That the Commission did not have authority to arbitrate section 271 terms of conditions It's supported by the language of the act by approximately 15 federal courts that have addressed this issue And by the policies of the act and I will explain all three facets of my argument in that regard momentarily But before I do I think it's important context to explain how we got here with this issue And it somewhat follows up on my colleague, mr. Wakefield's argument on behalf of Kovac As we describe in our brief the issue of what network elements are included in this unbundling requirement of section 251 Was the subject of approximately eight years of intensive litigation within the telecommunications industry? There was argument by CLEX like Kovac that the unbundling obligations of 251 Should be very broad and and the significance of that is if an element is deemed to be quote impaired and within section 251 then cost based so-called teller pricing Applies to that which the as the Supreme Court is called just short of confiscatory pricing It's a pricing regime that's designed to let CLEX enter the market initially so they can get a foothold and begin competing And so there was this intensive battle over what elements are included within 251 the FCC issued three separate orders between approximately 1996 and 2003 that imposed what is called blanket unbundling very broad unbundling so that most network elements were included Within 251 is impaired and subject to this cost based pricing The DC Circuit on three different occasions struck down the FCC's orders as being too broad Recognizing that there are significant social costs and policy costs that go with broad unbundling In about 2004 or 2003 and in 2005 the FCC started to get it right it issued the trainer review order Aspects of which were upheld and that order removed certain elements from 251 and made them subject to market based pricing not cost based pricing on the grounds that there's now competitive supply of these things in the marketplace and therefore consistent with the acts deregulatory purpose There's no longer a need for this type of what I would call ultra regulation and cost based pricing And then in 2005 the trainer review remand order was issued which further By the FCC removed elements from this pricing regime and regulatory regime Which brings us to this arbitration Coved and other CLEX competitive local exchange carriers around the country Reacted to these orders by the FCC Essentially by trying to end run them and what happened in this arbitration is cove ad presented proposed Contract language that said regardless of what the FCC has ruled with respect to what elements are in 251 Quest you're gonna have to continue to provide these elements at cost based prices under 271 So no one before it ever mentioned 271 Only in response to the FCC's delisting of these elements that the CLEX and cove ed came up with this 271 They had need to before the FCC heavy lifting for them. Well, that's right And now that world no longer existed and as mr Wakefield explained that results in price increases for the CLEX because they're now competitive supply in the market market based prices control and they don't like That because it they cost them more money, but that's the reality of the regulatory regime That's consistent with the deregulatory purpose of the act and so what happened in this arbitration is they tried to revert to the old world that no longer existed because the FCC's orders and They presented contract language that would have brought that about We arbitrated this and I personally arbitrated in front of 13 different state commissions on this issue 12 of which rejected out of hand covets proposals the only Commission that accepted covets proposal was the Arizona Corporation Commission Which which brings us here today? The decision of the district court essentially stops the end run that covet tried to make around the FCC's orders and The reason why the decision is is proper in addition to the fact that 15 courts before you have already plowed this ground and done the analysis Is number one the and you have to begin with the express language of the statute The statute does not give state commissions any 271 Authority whatsoever, but only gives consulting it has a role That's correct, yes, what do you make of that role the role is limited to Well, the way 271 works is a so-called Bell operating company like quest Can apply to provide long-distance service within its defined geographic reason and when it applies to do that the FCC consults with the states About whether entry into the long-distance market should be granted And it's just merely a consulting role. The FCC is not required to give The consultative advice any particular weight, but it's not a decision-making role and it's not a role that allows Arbitration of 271 obligations the imposition of terms and conditions with the two with respect to 271 obligations The only two substantive decision-making roles under 271 are one the decision to allow entry into a long-distance market and to monitoring continued compliance with the obligations of 271 and clearly and I think the Commission just acknowledged this Those roles are delegated exclusively to the FCC So there's nothing in 271 that gives states a substantive decision-making role Miss Scott on behalf the Commission tries to draw this distinction between substantive decision-making and implementation Saying that states can implement under 271 but not engage in substantive policy decisions. That's an illusory distinction There's nothing in 271 that says states you have an implementing role only consultative role with respect to the initial application for long-distance entry and moreover I point out even if and I don't agree with this, but even if state commissions had a Implementing role under 271 what has happened in this case is the state imposed very substantive requirements on quest So you will provide all elements that the FCC has removed from 251 at teller Prices you'll do it within certain time frames. You have to provision them within certain days of an order being presented This is this is a substantive requirement. So there was substantive decision-making that took place here on the Commission's part Judge King. I do want to address your question about mootness. There was a Suggestion from my colleague Miss Scott that the parties that entered into a settlement agreement with respect to some of these elements that might render at least the pricing issues moot and I want to just Explain to you why that's not the case the settlement agreement the parties entered into Involved a an element that's not covered by this interconnection agreement. It's called interstate Dedicated transport the Interconnection agreement at issue in this case does not involve that element. And so if this court Arguendo were to adopt the Commission's decision in this case. We would have an existing obligation At the time of the court's decision to begin providing at low-cost teller prices Many elements that the FCC has removed from section 251 So this case by no means is moot and the settlement agreement is wholly unrelated to the interconnection agreement at issue in the case Two more points to make before I conclude the Commission also relies somewhat on section 252 of the act And section 252 is a provision of the act that unlike 271 Gives the state's a very substantive role But that role is limited to Enforcing and establishing terms and conditions for section 251 surfaces and section 251 elements I won't belabor the point we walk through in our brief have the three or four different ways in which All the authority granted in 252 is limited to 251 Nowhere in those grants of authority. Is there any mention of section 271 authority? Does the state have does the State Commission have authority to arbitrate? 251 obligations by all means Does the state have authority to approve? arbitrated agreements Negotiated agreements that are consistent with 251. Yes by all means but not 271 the final point I'd like to make is Relates relates to the state's State Commission's attempt to invoke state law and It's argument that what it has done here does not conflict with federal law There are savings clauses in the act and those savings clauses say states with respect to network unbundling You may unbundle under state law to the extent your decisions are consistent with federal law here the unbundling that By unbundling, of course, I mean that the elements that quest is required to provide Here the unbundling that has been required plainly conflicts with federal law because it Conflicts with both the train or review order and trying to review remand order and moreover The Commission has imposed cost based prices for these elements The FCC has said are now governed by market-based prices. So there is a direct conflict there's no savings clause in the act that that Contexts this sort of conduct that is inconsistent with federal law and with the FCC's pronouncements as the federal agency charged with implementation of this act And then the final point I would make there's an important federal policy at stake here The act is designed not only to be deregulatory but to encourage competitive local exchange carriers to build their own facilities and not to Spend their business lives leasing from companies like quest that have been around a long time and the reason for that is Congress and the FCC has recognized that only by Encouraging companies to install their own facilities where there would be long lasting sustainable competition And only by encouraging that kind of competition will there be the type of technological innovation that the act is designed to promote You know If I decide to just lease from quest and not vent anything of my own to try to out-compete quest You're not gonna have a lot of technological innovation and when you have a scheme that the Commission created under this order that encourages Long-term reliance on quest network at these low cost based rates it flatly Contradicts and undermines this policy important policy of federal facilities based competition On The in some the language of the act the policy of the act the FCC's pronouncements and the decisions from 15 Approximately federal courts around the country including four other federal circuit courts Amply support the Commission's decision the district courts decision this case and we respectfully ask that it be affirmed Arizona doesn't seem to be too impressed by the other courts That that is true That is true I might add to that 30 state commissions around the country have reached the same conclusion that the district court Reached in this case. The Arizona Commission is truly an outlier with respect to this issue I The Commission's a professional Commission they do their best and I think they they just got it wrong this time your honor I see that I do have some time left there. Are there any additional questions? I may answer Apparently not. So we'll let you turn the podium over to your colleague. Thank you very much Good Morning my name is Kelly Dunbar on behalf of AT&T and Verizon who are amici In support of quest in this proceeding and I think there are just two two points. We wanted to pick up on the first is in response to judge Nelson's question and judge King's question about the four courts of appeals that have Held in very similar circumstances that state commissions had no role at all in enforcing section 271 counsel for the Arizona Commission suggested that those courts had failed to consider a particular provision in section 271 specifically to set section 271 C which references agreements approved under sections 251 and 252 And I wanted to point out to the court that that we don't agree with that reading of the four circuit courts opinion in fact the First Circuit expressly addressed a very similar argument and held that this cross-reference in section 271 is hardly a delegation of any authority to state commissions It simply recognizes that one of the conditions precedent to a Bell operating company achieving The authority to provide in region long-distance service is that an approved 251 agreement be in place It didn't give state commissions authority to determine or implement those requirements similarly the 11th circuit If you'll notice it was a short per curiam opinion which adopted in full the reasoning of a Georgia District Court That Georgia District Court as well Expressly addressed this caught cross-reference and held that it provided no role for state commissions in the section 271 process and Finally the 7th Circuit Addressed this argument on point and said that it simply didn't make any sense To quote the 7th Circuit in Illinois Bell because it failed to account for the limited role that state commissions are given in section 271 and as Judge Clifton asked the inclusion of that limited Consultation role actually works against the state's claim to have greater authority here because Congress clearly knew how to assign States a role in section 271 and it did so in very limited terms the second Issue that I wanted to pick up on and again Arizona Council for the Arizona Commission Suggested that they now agree that market-based rates should prevail for section 271 elements and that for that reason the State Commission isn't asserting a substantive a Substantive decision-making role and we think that's wrong for a couple of reasons The first is that the orders on their face require the imposition of tellerick Force four courts of appeals as well as the FCC have held that the imposition of tellerick rates with respect to 271 elements Simply can't stand that's a issue of preemption. So on that basis alone The district court was correct to vacate the dis the orders of the Arizona State Commission Setting aside that issue the State Commission now claims that what it really wants to do is to monitor The rates at which quest provides 271 elements to ensure that they comply with market-based rates But we think that's a contradiction in terms the whole point of deregulating Rates and leaving them to the give-and-take of the market is that it's not up to regulators to decide What the price should be for section 271 elements instead? That's a decision that's left to the give-and-take Of the marketplace and it's important to remember that with respect to the 271 elements that we're talking about in this proceeding Once the FCC has made a determination that they're no longer required under sections 251 and 252 What that amounts to is a decision by the FCC that competitors are no longer impaired without access to those elements Which means that the FCC believes that competitors are capable of providing these elements themselves Or they're capable of purchasing them from other suppliers in the marketplace at reasonable rates so the point is that once an element is taken out of the section 251 and 252 context and This is a point that the FCC has made and that the Seventh Circuit has made in the Eleventh Circuit has made There's simply no role for rate regulation at all No regulator whether it be the FCC or the State Commission is to evaluate The terms and conditions under which 271 elements are provided and so even as the State Commission Now attempts to backtrack from what it did in the order, which is imposed telleric rates, which is clearly preempted But by federal laws multiple courts and the FCC has recognized any Regulatory role for state commissions in a context in which the market rate would prevail should prevail would be preempted And on that point I in the final point that I wanted to add was that the Eleventh Circuit's analysis Adopting the analysis of a Georgia district court is particularly apt here And that is the point that to allow 50 individual state commissions the authority to review box provisioning of 271 elements and Determine what constitutes an appropriate rate whether it's a market-based rate or under telleric would invite 50 different conclusions from 50 different state commissions and that that type of disuniformity Isn't something that could be tolerated with respect to a National Communications Act Especially under section 271 where Congress has made a deliberate decision to give exclusive authority including The authority to decide whether a bot can provide long-distance service and also the ability to enforce and implement that provision Unless there are any further questions I Believe I've said enough Thank you for your argument. Thank you. Miss Scott. You have a little time left for your rebuttal Thank you, your honor First of all with respect to the t-e-lyric issue Again, our Commission ordered the t-e-lyric rate for a very limited period of time Because there was no evidence in the record with respect to market-based rates with respect to this deregulatory argument And that this is somehow a federal policy that states not be involved anymore once the Element is no longer required under the impairment standard. I want to point out that these 271 elements the competitive checklist are subject to adjust and reasonable standard So even though they are market-based rates, they are subject to a regulatory standard So that's there is a very important role for the regulatory body here Your honor you asked Earlier why it's important for the State Commission to be involved. Why isn't this why why couldn't the federal? FCC just handle these pricing issues It's my understanding that when a company files the tariff a tariff with the FCC. It's not subject to any review At the State Commission level in an arbitration proceeding the State Commission is very looks at is very careful to look at the pricing in its marketplace in its state to make sure that it is market-based if Taking an element out of the impairment standard out from under the impairment standard or section 251 was really envisioned by Congress to mean we want this completely Deregulated and subject to the market now Then there would have been no purpose for Congress to have Included it as a separate element in the competitive checklist and still subject to regulation and review Let me ask you when you say if you file a rate with the FCC. It's not is it is it? Capable of being reviewed or you are you saying that it's there is no way to get it reviewed Your honor, I'm not certain of all of the FCC practices All I know is that when a tariff is filed it's not subject to review I'm sure there may be a process for seeking FCC review, but I'm not sure Just speaking about deregulation generally in a number of agencies and I can't speak to the FCC in particular because fortunately I'm not on the DC circuit and don't have to deal with this as a steady diet But but a lot of times there's not automatic review It's not like the staff is in the process of deciding whether this rate is acceptable or not But it is left to to someone to object and if an objection a complaint is filed Then you start a process whereby review is accomplished by the agency So it may be capable of being reviewed even if it's not reviewed in a matter Of course, is that a distinction that that you are willing to accept here? I I understand that distinction It is possible that the tariff could be looked at under an enforcement Changes things for your argument because the first argument is I hear it in the first instance is that it's otherwise completely Unregulated and the states have to step in if we're going to have any regulation at all the alternative suggests Will you wait to see if somebody has a beef about it? If there's a beef about it, then it gets reviewed and regulation is there Automatic but I can't offer your honor that there was a petition filed by Bell South with respect to some 271 network elements years ago and that has not been reviewed yet by the FCC. There has been no ruling I'd like to speak just briefly to the issue about our Commission being a sole voice on this As you well know that just because of the number of district court decisions There were other commissions that took the exact same position that we do and feel very strongly about it You can look at our order that's being contested or is to you As a result of the district court order six eight four four zero and it Differentiates some of the other state commission decisions in the quest region As not actually being based upon a finding that the Commission was preempted from asserting Jurisdiction, but based upon some other Conclusion they determined not to proceed with the issue And one other point I just want to reiterate on there there's a continuing argument by quest that the Commission intends to implement Through this language a whole bunch of unis that aren't required by the FCC and that we intend to go against FCC rules and regulations on these matters that just simply is not the case we Have to comply with the FCC rulings One other point on the te lyric issue with respect to the mootness Mr. Devaney raised the point that the Settlement agreement covers only interstate dedicated transport That's because right now the tariff is filed at the FCC therefore that's all Kovac purchases if it were under the Interconnection agreement process it would be an intrastate matter Unless you have any questions your honor I'm don't say you thank you and thank all of your colleagues for your very clear and helpful arguments That's the last case on this morning's calendar. So this case is submitted with the others and we are adjourned
judges: Nelson D. W., Clifton, King